**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL S. FIELDER** | § | |
| | § | |
| **v.** | § | **NO.  A-07-CA-767 SS** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint (Clerk's Doc. No. 4);  Plaintiff's First

Amended Brief (Clerk's Doc. No. 22);  Defendant's Brief in Support of the Commissioner's

Decision (Clerk's Doc. No. 19); and the Social Security Record filed in this case  (Cited as "Tr.").

Plaintiff appeals from the Administrative Law Judge's (ALJ) determination that he is not "disabled"

and presents for review the following issues: (1) whether the ALJ's decision considered all of

Plaintiff's impairments as required; (2)  whether the ALJ's decision provides the appropriate

rationale with regard to the findings of residual functional capacity ("RFC"); (3) whether the

vocational testimony is consistent with the Dictionary of Occupational Titles as required by SSR 00-

4p; and (4) whether the ALJ properly considered Plaintiff's credibility.

## I.   BACKGROUND

At the time of his hearing on December 12, 2006, Plaintiff was 52 years old.  He has a tenth

grade education.  Tr. 101.  He testified that he lived in a tent west of Austin with his dog.  Tr. 278-

79.

In his disability report filled out July 11, 2006, Plaintiff reported that he was unable to work full time as of February 4, 2005. Tr. 98.  He reported that up to that time he was earning up to $1500 per month as a maintenance man for a homeowners association, but after a period of unemployment, on March 4, 2005, he started picking up trash about 5 hours a week, with an income of $50 per week. Tr. 98, 111.  Plaintiff was also formerly employed as a desk worker/launderer at a homeless shelter, a clutch press operator for a car clutch manufacturer, and as a worker at an alfalfa farm. *Id.*

The medical evidence is somewhat sketchy – possibly due to Plaintiff's homelessness – but Plaintiff reports he suffered a stroke on October 31, 2003, and alleges memory loss.  Tr. 30, 140. He later reports that he suffered a stroke in 2005, which was confirmed by the testimony of his former supervisor.  Tr. 280, 305 (stating "after his stroke things changed pretty dramatically . . . there wasn't capacity for him to do multiple tasks. . . .")  Plaintiff suffers from emphysema and/or chronic obstructive pulmonary disease ("COPD"), limited movement in his right shoulder, left knee pain, and is missing digits on his left hand.  Tr. 97.

A hearing was held at which Plaintiff testified.  He testified that he was divorced and that he was divorced "last year" but then seemed unclear whether he was divorced "this year, last year, I'm not sure." Tr. 277.  When asked how he knew he was divorced, he stated "from New York I got a check for 100 and thirty something dollars from where you, you send alimony." Tr. 277.  He testified that he lives in a tent near Lake Travis and that he lived there two years.  Tr. 279.  He testified that he was honorably discharged from the military, but that he would not accept VA housing benefits because the VA would not accept his dog.  Tr. 279.  Plaintiff testified that he operates a car.  Tr. 280. He testified that he worked as a maintenance man at Apache Shores neighborhood until he had a stroke in 2005, resulting in a frozen right shoulder.  Tr. 280.  Plaintiff testified that his injured right

2

shoulder has "definitely gotten better." Tr. 280. Plaintiff testified that he didn't think he had any residual symptoms related to his stroke, but that "I get lost when I am talking." Tr. 281. Plaintiff stated that he drives to a friend's house three days a week to do laundry, shower, eat, and maintain himself. Tr. 282. Other days he stays at his camp, reads the Bible and throws a ball for his dog. Tr. 282. Plaintiff recounted that he visited the VA and they found he had heart trouble, that they provided him with medication for his respiratory issues, and "nitro" for his heart with directions to take it once a day. Tr. 284. Plaintiff testified that he had seen a mental health professional one time, a week prior to the hearing, at the behest of his attorney. Tr. 289. Plaintiff testified that before his stroke he could perform the tasks of a maintenance man and now he cannot. Tr. 295. Plaintiff testified that he could not lift 50 pounds because he could not lift his dog, and that he could lift 20 pounds with his left hand, but not with his right because of his shoulder. Tr. 297. Plaintiff claimed that his right leg drags and that he is always short of breath. Tr. 300.

The former maintenance manager at Apache Shores, Lance,[1] stated that when he first hired Plaintiff he was able to patch roads which required carrying out multiple tasks, run a circular saw, maintain the pool, use a bobcat, trim trees, and respond to all requests. Tr. 303. Lance testified that after Plaintiff's stroke in 2005, he was only able to pick up trash for five hours a week. Tr. 305. Lance also testified that after he left the supervisor position Plaintiff was terminated because he was unable to keep on task. Tr. 306.

The ALJ's opinion found that Plaintiff suffers from COPD, osteoarthritis and allied disorders, and affective disorder. Tr. 16-17. He noted that these impairments or combination of impairments did not meet the requisite level of impairments as prescribed in the Social Security regulations. Tr.

---

[1]Lance's last name is not reflected in the record.

17.  The ALJ found that Plaintiff could not perform his past work, but retained the residual functional capacity to perform light work. Tr. 17.  The ALJ determined that Plaintiff's "limitations of his daily activities be [sic] by choice rather than due to a debilitating physical health impairment." Tr. 18.  The ALJ determined that Plaintiff's claims concerning the intensity, persistence, and limiting effects of these symptoms are "not entirely credible." Tr. 18.  Considering the testimony of the Vocational Expert, the ALJ determined that jobs exist in the national economy that Plaintiff can perform including jobs in assembly, as an inspector, and as a miscellaneous wire worker.  Tr. 19.  Thus, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's final decision in a limited fashion, as dictated by 42 U.S.C. § 405(g), determining whether: (1) substantial evidence of record supports the decision; and (2) whether the decision comports with proper legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   In reviewing the evidence, this court does not substitute its judgment for the Commissioner's judgment.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  If there are conflicts in the evidence, this court accepts the Commissioner's resolution of those conflicts so long as that resolution is supported by substantial evidence.  *See id.*

## III.  ANALYSIS

For the reasons that follow, the Court recommends that the Commissioner's decision be reversed and remanded for proceedings consistent with this opinion.

A.      **The ALJ Failed to Consider All of Plaintiff's Impairments**

Plaintiff first argues that the ALJ failed to consider all of Plaintiff's impairments and only considered his "COPD, osteoarthritis, and allied disorders." Tr. 16. Plaintiff complains that in assessing Plaintiff's RFC the ALJ failed to consider his two amputated fingers, his dementia, and medical evidence of his poor judgment. Plaintiff also asserts that the ALJ erred when he did not order a more in-depth evaluation of Plaintiff's dementia. Plaintiff's Brief at p. 4.

A just and valid administrative determination requires at a minimum consideration of all alleged impairments. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Administrative law judges must fully and fairly develop facts relevant to claims for benefits. *Kane v. Heckler*, 731 F.2d 1216, 1219-1220 (5th Cir. 1984); 42 U.S.C. § 405(g); 20 C.F.R. § 410.640. Failure to carry out this duty constitutes legal error, and precipitates a decision unsupported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986); (quoting *Kane v. Heckler*, 731 F.2d at 1219); *see also Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996); *Davis v. Califano*, 599 F.2d 1324 (5th Cir. 1979); *McGee v. Weinberger*, 518 F.2d 330 (5th Cir.1975). In this case, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet the criteria of an impairment listed in 20 C.F.R. § 404.1520 and that he retained the residual functional capacity to perform light work, although not his past relevant work.

A nuclear stress test given to Plaintiff on November 13, 2006, reflects that Plaintiff suffered from a heart attack at some point in the past. Tr. 175. The medical records also support that Plaintiff has an enlarged heart. Tr. 183. On September 13, 2006, Dr. Rebecca Traylor reported that she was concerned with the "possible cardiac component of [Plaintiff's] dyspnea" or shortness of breath. Tr. 206. She also stated "he does a peripheral vascular disease, strong family history of cardiac disease,

5

long smoking history, and cardiomegaly on chest x-ray.  He can have ongoing cardiac ischemia or evolving cardiomyopathy."[2]  Tr. 206. Medical records from the VA hospital dated October 2, 2006, show that Plaintiff arrived complaining of shortness of breath and it was recommended he be hospitalized for further testing after an abnormal EKG.  Tr. 217.  Dr. H. Muran Argun stated "Plaintiff refused and understands risks of heart attack and death and refused hospital admission repeatedly.  Will order nuclear stress test, continue asa, add low dose imdur 30mg/day as can't add much else due to pulse 60 and marginal BP." Tr. 217.  The nuclear stress test found abnormalities in Plaintiff's heart and showed "broad-based, mid and distal anteroseptal scar and apical scar." Tr. 175.

Plaintiff reports that he suffered a stroke in 2003 and 2005.  Tr. 30, 280, 305.  Plaintiff's former employer testified that Plaintiff's ability to work changed dramatically after his "stroke" and that he was no longer able to keep on task.  Plaintiff's duties were reduced to picking up trash five hours a week.  Plaintiff testified that "I feel like a seven year old . . . mentally, the way I, I associate things" Tr. 291.  Plaintiff was examined by a psychologist who found he had a GAF of 50 and suffered from major depressive disorder.  Tr. 266-67.

Social Security regulations establish a procedure whereby an administrative law judge may further develop the record by re-contacting a claimant's medical sources or by obtaining a further consultative examination.  20 C.F.R. § 416.912.  Social Security Ruling 96-2p amplifies this option by describing when additional evidence or clarifying reports may be necessary.  The duty to re-contact is triggered when the evidence is insufficient to make an informed determination.  In this case (although not framed this way by Plaintiff), the Court finds that the evidence before the ALJ

---

[2] In layman's terms, Plaintiff may be suffering from ongoing heart attacks and heart damage.

was insufficient to permit an informed decision regarding whether Plaintiff's heart condition and deficiencies resulting from his strokes qualify as severe impairments. Plaintiff is a homeless man with sporadic access to medical care. The medical records support that Plaintiff suffers from a heart condition, with a history of stroke and heart attacks, that the ALJ failed to consider. *See* Tr. 175. Additionally, his GAF was reported as 50 – meaning he suffers from "serious symptoms" or a "serious impairment in social, occupational, or school functioning." The Court finds that the ALJ's decision is not based upon substantial evidence and that he should have ordered a consultative exam assessing Plaintiff's cardiac issues, stroke history and damage, and potential decreased mental acuity. Moreover, the Court finds that had the ALJ ordered further assessments, the ALJ could have adduced evidence that might have altered the result. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

### B. The ALJ Improperly Assessed Plaintiff's RFC

Plaintiff next complains that the ALJ improperly assessed his residual functional capacity to perform light work. The ALJ determined that Plaintiff could lift 20 pounds and walk for 6 hours in an 8-hour work day. The medical records support that Plaintiff suffers from a loss of range of motion in his right arm and "frozen" shoulder. Tr. 123. The medical records reflect that Plaintiff suffers from loss of strength in his right arm and forearm. Tr. 156. The medical records also support that Plaintiff suffers from COPD/emphysema and uses a handheld inhaler. Tr. 151, 158. Plaintiff reported – and the medical records substantiate – that Plaintiff suffered at least one stroke in October of 2003. Tr. 133, 206. Plaintiff also reports that he suffered another stroke in 2005. Tr. 280, 305. Plaintiff is missing two fingers on his left hand. Tr. 146. The medical records show that Plaintiff complains of fatigue and shortness of breath and has suffered at least one untreated heart attack. Tr. 175.

A just and valid administrative determination requires at a minimum consideration of all alleged impairments. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000).  Because the ALJ had inadequate evidence before him to make an informed decision regarding Plaintiff's impairments, the Court finds that the ALJ must also reconsider Plaintiff's residual functional capacity on remand.

### C.    Whether the Vocational Testimony Was Proper

Plaintiff next argues that the ALJ's decision was based upon improper vocational testimony. The Vocational Expert testified that considering his abilities and limitations, Plaintiff could perform the jobs of assembler, inspector worker, and miscellaneous wire worker.  Plaintiff argues that these jobs are inconsistent with Plaintiff's abilities and with the definitions in the Dictionary of Occupational Titles.

The ALJ proffered the following hypothetical to the Vocational Expert:

Right-hand dominant person with that vocational profile.  Assume further that this individual during an eight-hour workday can sit for six hours, stand and walk up to six hours, lift or carry 20 pounds occasionally, 10 frequently, and can push and pull to those weights.  Assume that person can occasionally, occasionally, reach at or above his shoulder in the upper right extremity.  Otherwise the person can occasionally crawl, squat, stoop or bend, will be no climbing of ladders, or no working at heights.  Frequent but not constant handling, fingering, and feeling in the upper right extremity.  Assume further that the person has mild deficits in concentration, focus and attention, and that the person can perform detailed but not complex instructions.  Assume mild deficits with interrelating with coworkers, the public and supervisors and a person could respond appropriately into, from, in a regular work setting, to changes in a regular work setting.

Tr. 309.  However, in his Findings of Fact and Conclusions of Law the ALJ states "the claimant cannot perform frequent fine or gross manipulations."  Tr. 17.  Thus the ALJ's hypothetical to the Vocational Expert differed substantially from his own findings of Plaintiffs' limitations, but

nonetheless, the ALJ relied upon the Vocational Expert's testimony regarding what jobs Plaintiff could perform in finding Plaintiff "not disabled" at step five.  This was improper.

Unless the hypothetical question posed to the Vocational Expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand. *Bowling v. Shalala*, 46 F.3d 431 (5th Cir. 1994).  In this case, Plaintiff's counsel questioned the Vocational Expert about Plaintiff's inability to perform fine and gross manipulations because of his lost fingers on his left hand.  Tr. 311.  The Vocational Expert discounted the lost digits stated that the non-dominant hand was merely a "holder."  Tr. 311.  Despite Plaintiff's attorney's questioning, the Vocational Expert's testimony did not address Plaintiff's lost digits on his left hand and lack of fine motor skills.  Additionally, the Vocational Expert did not take into account those lost skills in conjunction with his "frozen shoulder" and loss of range of motion on his right side, in testifying about what jobs Plaintiff could perform.

The Court finds that the ALJ's question to the Vocational Expert failed to incorporate Plaintiff's limitations with fine manipulation with his left hand, which the ALJ later recognized in his determination.  This was error.  Moreover it was prejudicial error, as had the ALJ not relied upon the Vocational Expert's findings, he would have found Plaintiff disabled.  *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)

Additionally,  Plaintiff points out that the majority of assembler jobs and the wireworker job in the Dictionary of Occupational Titles require use of *both* hands for both gross and fine manipulation.  The inspector job is not included in the Dictionary of Occupational Titles, which the Commissioner does not dispute.  The evidence supports that Plaintiff is missing two fingers on his left hand and has decreased strength in his right hand and shoulder. Tr. 151.

The Commissioner asserts that the medical records support that Plaintiff has the use of both of his hands and fingers for fine and gross manipulation.  The Commissioner relies upon the report of Dr. Hameed Desunmu, M.D., in support of this contention.  Plaintiff states that "Dr. Desunmu noted that Plaintiff's handgrip was 5/5, it was normal and symmetric, and Plaintiff's fine finger movements were normal."  *See* Commissioner's Brief at p. 6 (relying on Tr. 157).  However the Report of Dr. Desunmu states "handgrip is 5/5 normal and symmetric, unless otherwise specified.  There is no evidence of fasciculations, atrophy, or rigidity.  Fine finger movements are normal.  The claimant has normal ability to handle small objects and button buttons on clothing."  Tr. 157. In another portion of the report Dr. Desunmu states "normal exam of LUE *except for tenderness and weakness as well as amputated tips of 3rd and 4th digits*."  Tr. 157 (emphasis added).

The Court finds that the record is unclear as to whether Plaintiff can utilize both hands in conjunction to perform fine manipulative tasks.  The ALJ himself noted that Plaintiff is unable to perform frequent fine manipulative tasks.  The ALJ failed to consider Plaintiff's missing digits on his left hand in conjunction with his right shoulder osteoarthritis and weakness in his right hand and arm in determining what jobs exist in the national economy Plaintiff could perform.  Thus the Court finds that the ALJ's determination that Plaintiff could perform these positions is not supported by

substantial evidence.  This, coupled with the need to reassess Plaintiff's residual functional capacity, requires remand of this case.

Additionally, Plaintiff's argument that the job cited by the ALJ that Plaintiff could perform – assembly worker – actually encompasses a number of jobs, some of which exceed his RFC, is well taken.  The "assembly worker" job identified by the ALJ actually encompasses a number of jobs in the DOT under the heading of "bench assembly,"some of which have a medium RFC exceeding Plaintiff's.  *See Carson v. Barnhart*, 140 Fed. App'x 29, 37 (10th Cir. 2005).  Apparently, production inspector, another job listed by the ALJ (who relied on the VE's testimony) is not even listed in the Dictionary of Occupational Titles (DOT).

The ALJ relied on clearly faulty and sloppy testimony by the VE – it is difficult to overlook the fact that the VE identified jobs that do not exist for purposes of disability benefit inquiries.  The ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony, before the ALJ may rely on the expert testimony to support the ALJ's determination of nondisability.  *See Carson*, 140 Fed. App'x at 37; *see also* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2 (2000).  The ALJ here neither acknowledged any conflict between the DOT and the VE's testimony nor elicited an explanation for the conflict.  *Id*.  Therefore, as a matter of law, the ALJ was not entitled to rely on the VE's testimony to support the Commissioner's burden at step five.

### D.    Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate the credibility of his testimony regarding his physical limitations and other subjective symptoms, as is required by 20 C.F.R.

§ 404.1529.  The ALJ found Plaintiff's allegations regarding his physical limitations to be not credible.  Tr. 18.  The ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.
>
> ****
>
> While it is noted that the claimant has a history of CVA, COPD, osteoarthrosis, and affective disorder, there is minimal evidence to substantiate this as debilitating.  The record does not support functional limitation that would prevent the claimant from performing all substantial work activity.  The evidence suggests that claimant's limitations in his/her daily activities be by choice rather than due to a debilitating physical health impairment.  The claimant's testimony is neither credible nor supported by objective evidence of record.

Tr. 18.  The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.

Here, the ALJ makes only a cursory finding that Plaintiff is not credible, and his unspecific findings are not supported by record evidence.  The decision fails to address any inconsistencies between Plaintiff's claimed limitations and the medical records.  Tellingly, Plaintiff's former supervisor testified that Plaintiff was a competent employee, but that his abilities drastically changed after Plaintiff suffered what he deemed a stroke.  The ALJ did not address this testimony at all.  The ALJ's determination that Plaintiff's limitations are by choice seems to be merely a personal opinion.  In fact, the ALJ's credibility opinion completely fails to address *any* statements made by Plaintiff

12

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The record reflects that the ALJ completely failed to consider the factors listed in 20 C.F.R. § 404.1529 in considering Plaintiff's symptoms. Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand. *Hayes v. Celebrezze*, 311 F.2d 648, 653-54 (5th Cir. 1963)). Thus, the Court finds that the ALJ's credibility finding is not based upon substantial evidence.

## IV. RECOMMENDATION

The Magistrate Court **RECOMMEND**S that the District Court **REVERSE** the decision of the Commissioner and **REMAND** the case for the ALJ to: (1) further develop the record of Plaintiff's stroke, cardiac issues, and decreased mental acuity; (2) properly assess Plaintiff's RFC considering all of Plaintiff's impairments; (3) properly perform step five of the disability analysis; and (4) properly assess Plaintiff's credibility.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 11th day of April, 2008.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE